**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE | § | |
| CORPORATION, as Conservator for | § | |
| Great American Federal Savings | § | |
| Association, and THE CADLE | § | |
| COMPANY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | MISCELLANEOUS |
| v. | § | ACTION NO. 3:01-MC-5–M |
| | § | |
| JAMES E. NEUBAUER and PAMELA | § | |
| D. NEUBAUER, husband and wife; | § | |
| JOSEPH M. FRIEDHEIM and JOYCE | § | |
| A. FRIEDHEIM, husband and wife; | § | |
| and LOUIS FRIEDHEIM, as | § | |
| Co-Trustee of The Joseph M. and | § | |
| Joyce A. Friedheim Family Trust, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are two Motions to Vacate,[1] filed by Defendants James E. Neubauer and

Pamela D. Neubauer and by non-party Roger Fisher, in his capacity as the Trustee.[2]  The Motions

request that the Court vacate its May 14, 2001 Order substituting The Cadle Company for the

Federal Deposit Insurance Corporation as Plaintiff.  Also before the Court is Defendants' Objection

to United States Magistrate Judge Stickney's Order of March 6, 2007.[3]  For the reasons set forth

below, the Court **DENIES** the Motions and the Objection.[4]

---

[1] The Motions were filed as Docket Numbers 103 and 118.

[2] James E. Neubauer and Pamela D. Neubauer are collectively referred to as "Defendants."  Roger Fisher is referred to as the "Trustee."  It appears that Roger Fisher is the Trustee for various trusts owned by the Neubauers, but the relationship is unclear based upon the papers currently before the Court.

[3] The Objection was filed as Docket Number 136.

[4] Defendants' arguments in their Objection are identical to the arguments in their Motion to Vacate.  The Court denies Defendants' Objection for the same reason that it denies Defendants' Motion to Vacate.

Because the Motions and the Objection are denied, Plaintiff's Motion to Compel Depositions and Production of Documents of James E. Neubauer and Pamela D. Neubauer, filed on August 13, 2007, is **GRANTED**.[5] Defendants are **ORDERED** to appear for depositions and to produce documents in accordance with the subpoenas served upon them on January 11, 2007. Although literal compliance is not possible, given that the scheduled time for the deposition of Defendants has passed, Defendants must appear for deposition with the requested documents by **September 10, 2007**. Should Defendants fail to do so by **September 10, 2007**, the Court will consider sanctioning Defendants, upon a motion to show cause filed by The Cadle Company.

## I. BACKGROUND

This action arises out of a series of loans guaranteed by Defendants between 1985 and 1987. In particular, on November 6, 1985, Defendants guaranteed a loan of six million dollars, made by Home Federal Savings and Loan Association ("Home Federal") to First & Sirrine.[6] On February 24, 1988, Home Federal, through a Participation Agreement, conveyed a ninety-percent undivided participation ownership interest in the First & Sirrine loan to Sun State Savings and Loan Association ("Sun State"). Sun State later conveyed an interest in the First & Sirrine loan to Resolution Trust Corporation ("RTC"),[7] and on December 30, 1993, RTC transferred its interest in the First & Sirrine loan to Premier Financial Services–West. On October 5, 1998, Premier Financial Services–West transferred its interest in the First & Sirrine loan to The Cadle Company ("Cadle").

On September 3, 1992, RTC, acting as conservator for Great American Federal Savings Association ("Great American"), filed suit in the United States District Court for the District of

---

[5] The Motion to Compel was filed as Docket Number 138.

[6] First & Sirrine is a Joint Venture by Joseph M. Friedheim and James E. Neubauer, Managing Venturers.

[7] The parties have not provided the transfer agreement or any document relating to this transfer.

Arizona for alleged defaults on fourteen loans made by Home Federal, including the First & Sirrine loan. In its Complaint, RTC alleged that Great American was the successor in interest and current owner of those loans, and alleged that as of September 1, 1992 the balance of the First & Sirrine loan was $3,916,455.62. The Federal Deposit Insurance Corporation ("FDIC"), as conservator for Great American, later became the plaintiff.[8] On January 22, 1996, the Arizona court entered a default judgment of $48,204,621.27 for all fourteen loans, holding all defendants jointly and severally liable.[9] Defendants contend that on or about September 21, 1999, the FDIC sent Defendants an IRS Form 1099-C, which purportedly cancelled the entire debt due on the judgment, including the debt on the First & Sirrine loan, effective December 18, 1998.

On January 18, 2001, Cadle filed a Notice of Filing of Foreign Judgment in this Court, and on February 26, 2001, it moved to substitute itself as Plaintiff, alleging that it owned an interest in the Arizona judgment. Cadle's Motion was unchallenged, and the Court granted Cadle's Motion on March 14, 2001. Cadle began to conduct post-judgment discovery. This Court compelled several depositions and appointed a receiver, who sold stock owned by Defendants to satisfy the debt purportedly owed to Cadle. Defendants and non-party Fisher, in his capacity as the Trustee, now move to vacate the Order of May 14, 2001 substituting Cadle as Plaintiff, claiming Cadle has no interest in the Arizona judgment.[10]

---

[8] The parties have not explained or objected to the substitution of the FDIC into the Arizona lawsuit.

[9] The default judgment listed only a lump sum and did not specify the amount due on individual loans.

[10] Cadle argues that Defendants' Reply in Support of their Motion to Vacate is untimely because Defendants filed it three days after the prescribed deadline. However, "[w]henever a party must or may act within a prescribed period after service and service is made [by mail], 3 days are added after the prescribed period would otherwise expire." FED. R. CIV. P. 6(e); FED. R. CIV. P. 5(b)(2)(B). Cadle served its Response by mail; therefore, Defendants are entitled to an additional three days to reply. Defendants' Reply is therefore timely.

## II. DISCUSSION

### *A. Waiver*

Cadle first asserts that Defendants have waived their right to object to the Substitution Order of May 14, 2001 ("Substitution Order") because they have waited over six years to do so. Defendants respond that they cannot have waived their right to object to the Substitution Order because they did not know that Cadle lacked an interest in the judgment.

Waiver is an affirmative defense which can be asserted only against "a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). Under Texas law, the defense of waiver requires a showing of three elements: (1) an existing right, benefit, or advantage; (2) actual or constructive knowledge of its existence; and (3) an intent to relinquish that right. *Days Inn Worldwide, Inc. v. Sonia Invs.*, No. 3:04-CV-2278-D, 2006 WL 3103912, at *13 (N.D. Tex. Nov. 2, 2006) (Fitzwater, J.) (citing *First Interstate Bank of Ariz., N.A. v. Interfund Corp.*, 924 F.2d 588, 595 (5th Cir. 1991)). Silence or inaction, if for a long-enough period to show intentional relinquishment, can establish waiver. *Enter. Prods. Co.*, 925 S.W.2d at 643. Waiver is ordinarily a question of fact, unless the facts are clear and undisputed, in which case waiver becomes a question of law. *Jernigan v. Langley*, 111 S.W.3d 153, 156–57 (Tex. 2003) (per curiam).

Waiver hinges primarily on intent, and "intent must be clearly demonstrated by the surrounding facts and circumstances" for implied intent to be found. *Days Inn Worldwide*, 2006 WL 3103912, at *13 (quoting *Jernigan*, 111 S.W.3d at 156). "There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right." *Jernigan*, 111 S.W.3d at 156. Facts which indicate a lack of attention or a certain

lack of care do not establish waiver.  *In re Gen. Elec. Corp.*, 203 S.W.3d 314, 316 (Tex. 2006).

Cadle argues that by participating in discovery and standing mute in the execution of the judgment

for six years, Defendants have waived the right to object to the substitution of Cadle as Plaintiff.

Cadle first asserts that Mr. Neubauer explicitly waived his right to object to substitution of

Cadle as Plaintiff in his deposition on May 17, 2001.  At his deposition, Mr. Neubauer brought the

IRS 1099-C form issued to him by the FDIC which purported to cancel the debt on the First &

Sirrine loan.  Cadle's attorney and Mr. Neubauer discussed the 1099-C form for several pages of the

deposition.  Cadle argues that Neubauer explicitly waived his right to object when he stated: "I'm

not going to take a legal position on whether I owe this debt or not."  This statement does not

support Cadle's argument.  In the context of an argument spanning several pages of the deposition,

this statement only demonstrates that Mr. Neubauer and Cadle's representative disagreed about

whether the IRS 1099-C form cancelled the debt owed on the loans or the judgment in the Arizona

lawsuit.  The Court finds that Mr. Neubauer has not explicitly waived his right to complain about

Cadle's substitution as Plaintiff.

Cadle next asserts that Defendants implicitly waived their right to object to Cadle's

substitution as Plaintiff by participating in post-judgment discovery and proceedings for six years

before raising the issue. "[I]t is the burden of the party who is to benefit by a showing of waiver to

produce conclusive evidence that the opposite party 'unequivocally manifested' its intent to no

longer assert its claim." *FDIC v. Attayi*, 745 S.W.2d 939, 947 (Tex. App.—Houston [1st Dist.]

1988, no writ) (citing *Marriott Corp. v. Azar*, 697 S.W.2d 60, 65 (Tex. App.—El Paso 1985, writ

ref'd n.r.e.)).  Cadle has not produced conclusive evidence to meet this burden.  Defendants'

participation in post-judgment discovery and proceedings does not conclusively establish that

Defendants "unequivocally manifested" their intent to no longer assert a Motion to Vacate the

Substitution Order.  Thus, the Court will not hold that Defendants have implicitly waived their right to object as a matter of law.

## B. District Court Review of the Substitution Order

Cadle next asserts that Federal Rule of Civil Procedure 60 bars Defendants' Motion to Vacate because the one-year time for review of the Substitution Order has passed.  Defendants respond that the Substitution Order is interlocutory rather than final, so Rule 60 does not apply.  Federal Rule of Civil Procedure 60(b) permits the Court to relieve a party from the effects of a final order.  FED. R. CIV. P. 60(b).  Rule 60 does not apply to interlocutory orders, which the Court may vacate "as justice requires."  *Zimzores v. Veterans Admin.*, 778 F.2d 264, 267 (5th Cir. 1985).  Therefore, the Court must first decide whether the Substitution Order was final or interlocutory.

"A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Catlin v. United States*, 324 U.S. 229, 233 (1945).  In the present case, a final judgment had already been rendered when the Court granted Cadle's Motion to Substitute.  "Substitution is appropriate after judgment for the purpose of subsequent proceedings to enforce the judgment."  6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 25.35 [1] (– ed. 2007); *see also Air Line Pilots Ass'n Int'l v. Tex. Int'l Airlines, Inc.*, 567 F. Supp. 78, 81 (S.D. Tex. 1983) (citing *Panther Pumps & Equip. Co. v. Hydrocraft, Inc.*, 566 F.2d 8, 23 (7th Cir. 1977)).  "[M]ost post judgment orders are final decisions . . . as long as the district court has completely disposed of the matter." *United States v. Steward*, 452 F.3d 266, 272 (3d Cir. 2006) (quoting *Ohntrup v. Firearms Ctr., Inc.*, 802 F.2d 676, 678 (3d Cir. 1986)) (internal quotation marks omitted).  In the present case, the Court's post-judgment Substitution Order is a final decision because it completely disposed of the matter; nothing was left for the Court to do but enforce the judgment.  Defendants argue that post-judgment discovery

motions are generally not considered final orders unless sanctions are issued. However, the Substitution Order is not a post-judgement discovery motion and thus does not fall into this exception. The Court concludes that the Substitution Order is final, and Rule 60 applies.

Federal Rule of Civil Procedure 60(b) allows a court to relieve a party of the terms of a final order due to: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud . . . , misrepresentation, or other misconduct of an adverse party; . . . or (6) any other reason justifying relief from the operation of the judgment." FED. R. CIV. P. 60(b). Claims under subsections (1) through (3) of Rule 60(b) must be brought within one year of entry of the final order. *Id*. Defendants and the Trustee allege that Cadle misrepresented to the Court and to Defendants that Cadle had an interest in the Arizona judgment.[11] A claim of misrepresentation falls under Rule 60(b)(3), and the one-year period to request relief applies. *Id*. Over six years have passed since the Substitution Order was entered on May 14, 2001, so Defendants cannot seek relief under Rule 60.[12]

The present case could fall within the catch-all clause of 60(b)(6), but for the fact that the clauses of Rule 60(b) are mutually exclusive. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988) (stating that "clause (6) and clauses (1) through (5) are mutually exclusive"). Therefore, Defendants cannot seek relief from the Substitution Order because the Trustee's and Defendants' claims fall within Rule 60(b)(3), and the claims were not made timely.

---

[11] Cadle alleges that the Trustee lacks standing to bring a Motion to Vacate because he is not a party to the suit. He replies that he has standing because Cadle subpoenaed him and attempted to conduct discovery against him. The Court assumes the Trustee's standing, but otherwise declines to resolve this issue as it is unnecessary to the Court's determination of the Motions and Objection before it.

[12] The Trustee argues that under Rule 69(a), Cadle does not have a right to discovery because "Cadle's interest in the judgment does not appear of record." However, the Substitution Order established that Cadle is "an owner of the judgment," so Cadle's interest in the judgment appears of record.

*C. Standing*

Defendants argue that the Substitution Order should be vacated because Cadle lacks standing, citing Federal Rule of Civil Procedure 12(h)(3). Rule 12(h)(3) concerns dismissal of an action for lack of subject matter jurisdiction. Defendants appear to confuse subject matter jurisdiction with standing under Article III of the United States Constitution. In any case, Cadle has standing under Article III as it "allege[d] personal injury fairly traceable to the defendant's allegedly unlawful conduct [that is] likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

## CONCLUSION

For the reasons set forth above, the two Motions to Vacate the May 14, 2001 Order to Substitute Cadle as Plaintiff are **DENIED**. For the same reasons, Defendants' Objection to United States Magistrate Judge Stickney's Order of March 6, 2007 is **DENIED**.

**SO ORDERED**.

August 17, 2007.


**BARBARA M.G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**